We move to the seventh case, United States v. Contreras. Good morning, Your Honor. Stephen Shannon. Good morning, Your Honor. Stephen Shannon on behalf of Daniel Contreras will please report. Your Honor, as in most of the enhancements, this is an issue regarding a guideline sentencing enhancement, the use of a residence in connection with a drug dealing. As the case is with most of these enhancements, it's fact-based. What we need to underline is a finding of fact. In the Sanchez case, United States v. Sanchez, and I have the Seventh Circuit number on that, 15-1356, Judge Dow makes it clear that he tracks exactly the guideline by inquiring how frequently the premises were used for distributing the drugs and how often they were used for lawful purposes. And he made a finding on each. What's at dispute here, in dispute here, is whether the judges in Mr. Contreras' three cases made the finding of what the lawful uses were. We certainly agreed, and the finding was made, that there were at minimum seven or eight transactions out of this residence, but there was no finding as to the lawful uses. What I revered in my position paper and stood on was that there was an occasional use, the occasional being the seven or eight drug transactions. Well, I don't think the law requires that methodology. It requires only that distributing controlled substances be a primary or principal, a primary, not the primary, but a primary or principal use of the premises during the relevant time period. It doesn't require the judge to catalog all the lawful uses and then put it on a scale opposite the unlawful use. That's one methodology for doing the job, but it's not a required methodology. Your Honor, I respect your opinion that you drafted in Sanchez, and I certainly read it over. The actual language, and I would like to think about this, and I do think about this, is a fraction, a numerator and a denominator. The judges all found the numerator, but there was no finding of the denominator. In the last sentence, I'm sorry. If we define a primary as meaning the activity which occurs for the largest amount of time, that would limit the increase to vacant houses used only for drug dealing. The time spent sleeping and eating alone would outnumber the time spent on drug transactions. And that's what would make the drug activity not a primary use, it seems to me. Good morning, Judge Rothner. I agree that it certainly was a primary use. I do not disagree with that. But what I'm suggesting is that in order to arrive at the determination of whether it was a primary, there's a balancing act that's in the last sentence of 2D1.1B12 in the application notes. In making the determination, if I might quote, the court should consider how frequently the premises are used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises were used by the defendant for lawful purposes. And my contention, Your Honor, based upon the record, my reading of the record, is that I believe that that second part was not found. That it was just the numerator, as I suggested in my metaphor, rather than a numerator over a denominator. Your Honor, if I may clarify, I agree with the general principle that it could be more than one primary use. Anything further? Your Honor, thank you very much. Thank you, Your Honor. All right. Ms. Kim. Good morning. May it please the court, Nicole Kim on behalf of the United States. Here, the district court in all three cases properly applied the two-level enhancement because for an extended period of time in 2013, the defendant used his residence for drug distribution. The undisputed facts in the case show that his premise was a defendant's residence. He lived there. He rented it out. He had utilities registered there under his name. And for several months in 2013, he conducted at least eight narcotics transactions. These transactions involved kilogram quantities of drugs. He directed people to drop off drugs there. He directed customers to come to his house to pick up the drugs and to pay for them. And he even in one occasion directed his roommate to pay back drug proceeds that he owed to another individual and directing them to conduct that exchange at the house. Does the gap in time between the March and April transactions and the fall transactions raise concern in that it indicates that for some appreciable amount of time, the residence was not being used for unlawful activity? No, Your Honor. I don't believe it does. I believe that the transactions had a similar quality to all of them. They were, as I said before, directing people to come to the house to pick up the drugs and pay for the drugs. And even if there was some gap in time, there was a continuity in the sense that he was picking up the same kind of transaction back in the fall of 2013, which is what I think you were inquiring about. So I do not think that that takes away from the fact that one of the primary purposes of this residence was to distribute drugs. And based on those undisputed facts and the evidence in the record, we believe that all three district courts in the cases properly applied the enhancement and explained why it applied it. And for those reasons, Your Honor, we ask that you affirm the defendant's sentences.  If I might just point out, this was a major drug conspiracy that spread over many defendants in over three cases and without a finding as to at least the lawful uses of the residence as a ratio with the frequency of use in the illegal drug trade, considering the illegal drug trade over three cases was quite substantial. I think there needs to be that finding. I think it needs to be remanded and a finding made. Thank you. Thank you, Counsel. Thanks to both counsel. And the case is taken under advisement.